UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

ARTHUR PETROV,
ZHANNA SOLDATENKOVA, and
RUSLAN ALMETOV,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INDICTMENT**

24 Cr. _____

24 CRIM 583

The Grand Jury charges:

**INTRODUCTION**

1. The charges in this Indictment arise out of a sophisticated international scheme to violate and evade U.S. export controls against Russia that began before and continued after Russia's February 2022 invasion of Ukraine. The defendants, ARTHUR PETROV, a German-Russian national, and ZHANNA SOLDATENKOVA and RUSLAN ALMETOV, who are Russian nationals operating an illicit procurement network in Russia and elsewhere overseas, fraudulently procured from U.S. distributors large quantities of micro-electronics subject to U.S. export controls on behalf of LLC Electrocom VPK ("Electrocom"), a Russia-based supplier of critical electronics components for manufacturers supplying weaponry and other equipment to the Russian military. To carry out the scheme, the defendants used shell companies and other deceptive means to conceal that the electronics components were destined for Russia. The technology that the defendants procured in contravention of export controls during the course of the conspiracy has significant military applications, and include various types of electronics

components that have been recovered in Russian military hardware on the battlefield in Ukraine, such as Russian guided missiles, drones, and electronic warfare and communications devices.

2. To perpetrate the scheme, ARTHUR PETROV, the defendant, first acquired the controlled micro-electronics from U.S.-based electronics exporters using a Cyprus-based shell company, Astrafteros Technokosmos LTD ("Astrafteros"). PETROV procured these sensitive electronics components by falsely representing to the U.S. exporters that Astrafteros was purchasing the items for fire security systems, among other commercial uses, and that the ultimate end-users and destinations of the electronics were companies in Cyprus, Latvia, or Tajikistan — when in fact the components were destined for Electrocom in Russia, which supplies manufacturers for the Russian military. The micro-electronics that PETROV procured as part of the conspiracy included, among other things, microcontrollers and integrated circuits that are on the Commerce Control List ("CCL") maintained by the U.S. Department of Commerce ("DOC") and cannot lawfully be exported or reexported to Russia without a license from the DOC. Invoices provided to PETROV by the U.S. distributors expressly noted that these microcontrollers and integrated circuits are subject to U.S. export controls. As noted, these types of micro-electronics have been recovered in Russian military equipment on the battlefield in Ukraine.

3. To evade these controls, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, worked together to transship the controlled items using pass-through entities in third countries. In particular, after fraudulently procuring the electronics components from the U.S. distributors, PETROV shipped the controlled items to a pass-through shipping company in Latvia used by SOLDATENKOVA, Ultra Trade Service LLC ("Ultra Trade Service"), or to a pass-through shipping company in Tajikistan operated by ALMETOV, LLC Juzhoi Electroni ("Juzhoi"). SOLDATENKOVA and ALMETOV then caused the items to be

shipped, sometimes through yet another third country, such as Lithuania, to the ultimate destination: Electrocom in Saint Petersburg, Russia. At all times relevant to this Indictment, the defendants concealed from the U.S. distributors that they were procuring the controlled electronics components on behalf of Electrocom — a key supplier for the Russian military industrial complex, as set forth herein — and that the items were destined not for Cyprus, Latvia, or Tajikistan, but rather for Russia.

4. During the course of the scheme, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, procured from U.S. distributors and shipped to Russia more than $225,000 worth of controlled electronics components with military applications. None of the defendants, or the entities they used to perpetrate their scheme, ever applied for an export license from the DOC.

**The Defendants and Relevant Entities**

5. Electrocom is a Russia-based supplier of electronics to the Russian military, founded by RUSLAN ALMETOV, the defendant, and two other Russian nationals. At all times relevant to this Indictment, ALMETOV was an executive at Electrocom, and ARTHUR PETROV and ZHANNA SOLDATENKOVA, the defendants, were employees at Electrocom. On behalf of Electrocom, PETROV, SOLDATENKOVA, ALMETOV, operated and used pass-through entities — Astrafteros (in Cyprus), Ultra Trade Service (in Latvia), and Juzhoi (in Tajikistan), respectively — to procure electronics from U.S.-based companies by misrepresenting the true destination and end-use of the electronics, and then causing those goods and technology to be shipped to Electrocom in Russia, in violation of U.S. export controls. The company's official name — LLC Electrocom VPK — reflects its principal purpose as a supplier of components used by the Russian military: "VPK" is commonly used as an acronym in Russian for "Military Industrial Complex."

Consistent with its corporate name, Electrocom supplies dual-use electronics — that is, electronics with both civilian and military applications — to Russian military suppliers, including multiple companies that have been sanctioned by the U.S. Government. For example, in a draft letter dated March 10, 2023, which SOLDATENKOVA received from an associate, and was addressed from Electrocom to TRV-Engineering — a U.S.-sanctioned Russian company affiliated with Tactical Missiles Corporation JSC, a U.S.-sanctioned Russian defense conglomerate that produces airborne weapons and weapon systems for Russia's navy[1] — ALMETOV, the signatory to the letter identified as Electrocom's "General Director," described Electrocom as "specializ[ing]" in "the supply" and import to Russia of "hard-to-reach" and "high-tech electric components produced in the United States, Europe and Asia for domestic enterprises of both the civil sector and the military industrial complex."

6. ARTHUR PETROV, the defendant, who principally resided in Cyprus and Russia, among other locations, operated Astrafteros, a shell company registered in Cyprus, to procure from U.S. distributors micro-electronics for transshipment to Russia. PETROV worked for Electrocom and used Astrafteros as a front company, working together with ZHANNA SOLDATENKOVA

---

[1] On or about March 24, 2022, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") designated Tactical Missiles Corporation JSC as a Specially Designated National ("SDN") for "operating or having operated in the defense and related materiel sector of the Russian Federation economy and for being owned or controlled by, or having acted or purported to act for or on behalf of, directly or indirectly, the Government of the Russian Federation," and OFAC designated TRV-Engineering (also known as TRV Auto Limited Liability Company) as an SDN for "being owned or controlled by, or having acted or purported to act for or on behalf of, directly or indirectly, [Tactical Missiles Corporation JSC]." On or about April 1, 2022, the DOC added "Tactical Missile Corporation, TRV Engineering" to the DOC's Entity List — which identifies entities for which there is reasonable cause to believe the entities have been involved, are involved, or pose a significant risk of being or becoming involved in activities contrary to the national security or foreign policy interests of the United States — "for acquiring and attempting to acquire items subject to the [DOC's Export Administration Regulations] in support of Russia's military."

and RUSLAN ALMETOV, to procure from U.S. distributors hundreds of thousands of dollars' worth of controlled goods that they then transshipped to Electrocom in Russia. Based on a review of email communications, PETROV represented that he was "Head of Purchasings" for Astrafteros. PETROV's public online profile stated that he stopped working for Electrocom in February 2022 — and described his role there as "Purchaser" and "Head [o]f Purchasing Department" in Russia" — yet his email signature blocks and the content of his email correspondence made clear that he was still working for Electrocom but doing so under the Astrafteros name. For example, even after he began operating as the "Head of Purchasings" for Astrafteros, PETROV sometimes even used an email address expressly associating him with Electrocom.

7. ZHANNA SOLDATENKOVA, the defendant, who resides in Russia, at all times relevant to this Indictment, worked for Electrocom and transshipped U.S.-sourced electronics to Electrocom in Russia through Ultra Trade Service, a Latvian third-party distributor. SOLDATENKOVA used Ultra Trade Service as a pass-through for U.S.-sourced parts procured for Electrocom by ARTHUR PETROV, the defendant, through Astrafteros in Cyprus. During the course of the scheme, the website for Ultra Trade Service stated that the company supplies "electronic components" and provides "supply and service in Russia."

8. RUSLAN ALMETOV, the defendant, who resides in Russia, is the co-founder and has served as General Director of Electrocom. As part of the illicit procurement network with ARTHUR PETROV and ZHANNA SOLDATENKOVA, the defendants, ALMETOV operated Juzhoi, a shell company registered and based in Tajikistan, to transship U.S.-sourced electronics procured by PETROV and Astrafteros in Cyprus, to Electrocom in Russia, a critical supplier for the Russian military.

**<u>Background on Russia's Use of U.S.-Sourced Electronics in Ukraine</u>**

9. Russia is highly dependent on Western-sourced micro-electronics components for its military's hardware, including components manufactured or sold in the United States. Russia relies on third-party transshipment hubs and clandestine procurement networks, such as the network operated by ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, to secure access to such U.S.-sourced electronics.

10. Russia's weapons systems and military platforms — including rocket systems, drones, ballistic missiles, tactical radios, and electronic warfare devices — contain a range of predominantly Western-sourced components and micro-electronics that are critical to their functions. Russia's war effort in Ukraine is particularly dependent on components sourced from the United States. An array of U.S.-sourced components have been found in Russian military hardware recovered in Ukraine since Russia's February 2022 invasion. As set forth below, many of these components are subject to export controls in the United States. Categories of electronics components found in Russian military hardware in Ukraine include, among other things, the types of microcontrollers and integrated circuits that ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, have fraudulently procured from U.S. distributors and illicitly shipped to Electrocom in Russia.

**<u>Background on Applicable Export Regulations</u>**

11. On August 13, 2018, the then-President signed into law the National Defense Authorization Act of 2019, which included the Export Control Reform Act ("ECRA"). *See* 50 U.S.C. § 4801 *et seq*. ECRA provides permanent statutory authority for the Export Administration Regulations ("EAR"), Title 15, Code of Federal Regulations, Sections 730-774.

12. ECRA provides that "the national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items, and specified activities of United States persons, wherever located, be controlled." 50 U.S.C. § 4811. To that end, ECRA grants the President the authority to "(1) control the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. 50 U.S.C. § 4812. ECRA grants to the Secretary of Commerce the authority to establish the applicable regulatory framework. 50 U.S.C. § 4813.

13. ECRA authorizes the DOC to review and control the export from the United States of certain items, including goods, software, and technologies. The EAR outline the regulatory framework as provided by ECRA. In particular, the EAR restrict the export of items that could contribute to the military potential of other nations or that could be detrimental to U.S. foreign policy or national security. The EAR impose licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully reexported from one foreign destination to another.

14. Through the EAR, the DOC's Bureau of Industry and Security ("BIS") reviews and controls the export from the United States to foreign countries of certain items. In particular, the BIS has placed restrictions on the export and reexport of items that the BIS has determined could make a significant contribution to the military potential or nuclear proliferation of other nations or that could be detrimental to the foreign policy or national security of the United States. Under the EAR, such restrictions depend on several factors, including the technical characteristics of the item, the destination country, the end-user, and the end-use.

15. The most sensitive items subject to EAR controls are identified on the Commerce Control List, or CCL, set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1. Items listed on the CCL are categorized by Export Control Classification Number ("ECCN"), each of which have export control requirements depending on destination, end-use, and end-user. As of April 8, 2022, license requirements for export to Russia were expanded to cover all items on the CCL. *See* 87 Fed. Reg. 12226 (Mar. 3, 2022); 87 Fed. Reg. 22130 (Apr. 14, 2022); 15 C.F.R. § 746.8.

16. As detailed below, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, procured items controlled on the CCL, for which an export license from the DOC is required for the export, or reexport, to Russia of these goods. None of the defendants — nor their affiliated entities — applied for, or received, a license from the DOC to ship controlled items to Russia.

17. Under ECRA, it is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any regulation, order, license, or authorization issued pursuant to the statute, including the EAR. *See* 50 U.S.C. § 4819(a)(1).

**The Scheme**

18. As described above, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, perpetrated a scheme to evade and violate U.S. export controls by procuring and shipping controlled electronics with military applications to Russia. PETROV negotiated the purchase and export of the electronics with U.S.-based suppliers. To procure the technology, PETROV misrepresented that the goods would be shipped to Cyprus, Latvia, or Tajikistan — which were in fact the locations of pass-through shipping companies operated and used by PETROV and his co-conspirators to transship the components to Electrocom

in Russia. In particular, SOLDATENKOVA used Ultra Trade Service in Latvia, and ALMETOV used Juzhoi in Tajikistan, to ship to Russia the sensitive U.S.-sourced components initially procured by PETROV. As an essential part of the scheme, the defendants concealed from the U.S. exporters that the goods were destined for Russia at all times relevant to this Indictment.

19. Set forth below are three examples of exports of controlled technology that ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, executed as part of this scheme ("Export #1," "Export #2," and "Export #3").

**Export #1**

20. In or about April 2022, approximately six weeks after Russia's invasion of Ukraine, ARTHUR PETROV, the defendant, began communicating with a U.S.-based electronics distributor ("U.S. Distributor-1"), to purchase an array of micro-electronics, including electronics subject to DOC export controls, as set forth below.

21. In his initial correspondence with U.S. Distributor-1 in or about April 2022, ARTHUR PETROV, the defendant, misrepresented that Astrafteros in Cyprus was the end-user of the items, falsely claiming that Astrafteros is a "fabless manufacturer (fire security systems sphere)," when in fact PETROV operated Astrafteros as a pass-through freight-forwarder, on behalf of Electrocom and in coordination with ZHANNA SOLDATENKOVA and RUSLAN ALMETOV, the defendants.[2]

22. The electronics that ARTHUR PETROV, the defendant, procured as part of the scheme from U.S. Distributor-1 in Export #1 included microcontrollers that are controlled on the

---

[2] The defendants communicated primarily in Russian. Descriptions of those communications in this Indictment reflect draft English translations. Throughout this Indictment, all communications are described in substance and in part, and quoted text appears as in the original messages, including any typographical and grammatical errors, except where alterations are indicated.

CCL for Anti-Terrorism reasons under ECCN 3A991.a.2, such that a license from the DOC was required for the export or reexport to Russia of this item at all times relevant to this Indictment.

23. On or about July 14, 2022, following the above-referenced misrepresentations by ARTHUR PETROV, the defendant, about the nature of Astrafteros and the destination of the electronics he was seeking to purchase, U.S. Distributor-1 sold PETROV and Astrafteros approximately 15 16-bit flash microcontrollers, controlled under ECCN 3A991.a.2, and shipped the microcontrollers on or about July 16, 2022 from the United States to PETROV at an address in Cyprus, where PETROV operated the shell company Astrafteros. On the invoice for the order provided to PETROV, U.S. Distributor-1 expressly noted that the 15 microcontrollers are controlled under ECCN 3A991.a.2 and stated that the export of the microcontrollers is controlled by the U.S. Government, authorized "only to the country of ultimate destination for use by the ultimate consignee or end-user(s) herein identified," and that the items are prohibited from being "resold, transferred, or otherwise disposed of, to any other country or to any person other than the authorized ultimate consignee or end-user(s)."

24. On or about July 20, 2022, ARTHUR PETROV, the defendant, received the 15 controlled microcontrollers in Cyprus. On or about July 27, 2022, ZHANNA SOLDATENKOVA, the defendant, emailed PETROV requesting a status update on the microcontrollers. On or about July 28, 2022, PETROV informed SOLDATENKOVA via email that he would send her the microcontrollers imminently, along with other micro-electronics procured from U.S. Distributor-1.

25. On or about July 29, 2022, ZHANNA SOLDATENKOVA, the defendant, sent a contract, which included the 15 controlled microcontrollers, to an employee of a Russia-based logistics company, IBMLogistics, who was responsible for coordinating the transportation of the

goods to Russia. ARTHUR PETROV and ZHANNA SOLDATENKOVA, the defendants, used IBMLogistics to transship sensitive, controlled electronics components — after PETROV procured the goods from U.S. distributors and the goods were shipped to PETROV and Astrafteros in Cyprus — to Electrocom in Russia. The contract explicitly stated that the buyer of the goods was Electrocom, and the resulting invoice from IBMLogistics stated that the goods would be shipped to Saint Petersburg, Russia.

26. On or about September 20, 2022, ZHANNA SOLDATENKOVA, the defendant, emailed a contract to an employee of a Russian Radio Frequency Identification ("RFID") company, Unimax LLC ("Unimax"), reflecting the sale by Electrocom to Unimax of approximately 185 microcontrollers of the same make and model as the 15 microcontrollers that U.S. Distributor-1 exported to PETROV and Astrafteros. The contract indicated that Electrocom was shipping the microcontrollers to Unimax's Moscow address. Russia is reliant on Western imports for its RFID chips, which have significant military applications, including for use in tagging military assets for tracking purposes.

27. A DOC license was not applied for, or obtained, in connection with the export of the 15 controlled microcontrollers in Export #1.

**Export #2**

28. In or about July 2022, ARTHUR PETROV, the defendant, began purchasing DOC-controlled electronics from another U.S.-based distributor ("U.S. Distributor-2"). On or about July 27, 2022, in order to procure the sensitive controlled goods, PETROV misrepresented the nature of Astrafteros's business to a U.S. Distributor-2 employee in an email, stating that the function of Astrafteros is "design and production" — when in fact, as described above, PETROV operated Astrafteros as a pass-through freight-forwarder, on behalf of Electrocom and in coordination with

ZHANNA SOLDATENKOVA and RUSLAN ALMETOV, the defendants, to obtain electronics for Electrocom.

29. Export #2 included integrated circuits that were controlled on the CCL under ECCN 3A991.b.1.a for Anti-Terrorism reasons, such that a license from the DOC was required for the export or reexport to Russia of this item at all relevant times to this Indictment.

30. On or about August 18, 2022, U.S. Distributor-2 shipped an array of dual-use electronics to Astrafteros's address in Cyprus. In the shipping, billing, and end-use records and correspondence, ARTHUR PETROV, the defendant, falsely represented to U.S. Distributor-2 that the "ultimate consignee" of the controlled items was Ultra Trade Service — that is, the Latvian third-party distributor used by ZHANNA SOLDATENKOVA, the defendant, to perpetrate the scheme on behalf of Electrocom. The invoice that U.S. Distributor-2 provided to PETROV for Export #2 noted the ECCN numbers under which the goods were controlled and explicitly stated that "re-export[ation]" or further "ship[ment] to another destination" was prohibited under U.S. export controls.

31. On or about August 22, 2022, ARTHUR PETROV, the defendant, emailed ZHANNA SOLDATENKOVA, the defendant, informing her that Export #2 would be sent the following day. PETROV also emailed SOLDATENKOVA a shipping label and an invoice for Export #2, reflecting the controlled micro-electronics that had been shipped by U.S. Distributor-2 to Astrafteros in Cyprus.

32. On or about August 31, 2022, ZHANNA SOLDATENKOVA, the defendant, emailed an employee of IBMLogistics, providing IBMLogistics with the weights for each of the items ordered, including the export-controlled integrated circuits. On or about September 2, 2022, SOLDATENKOVA sent a contract for the order to IBMLogistics. The contract set forth that the

buyer of the goods was Electrocom, and the resulting invoice from IBMLogistics stated that the goods would be shipped to Saint Petersburg, Russia.

33. A DOC license was not applied for, or obtained, in connection with the export of the integrated circuits in Export #2.

**Export #3**

34. On or about July 15, 2022, ARTHUR PETROV, the defendant, ordered from U.S. Distributor-1, via email, 90 microcontrollers — specifically, 16-bit flash digital signal processors and controllers — based on his same April 2022 misrepresentation to U.S. Distributor-1 that Astrafteros was the end-user of the goods purchased from U.S. Distributor-1 and that Cyprus was the final destination.

35. The microcontrollers procured in Export #3 are controlled on the CCL under ECCN 3A991.a.2 for Anti-Terrorism reasons, such that a license from the DOC was required for the export or reexport to Russia of this item at all times relevant to this Indictment.

36. On or about January 11, 2023, relying on the above-referenced misrepresentations by ARTHUR PETROV, the defendant, to U.S. Distributor-1 about the nature of Astrafteros and the final destination of the goods, U.S. Distributor-1 shipped the 90 controlled microcontrollers from the United States to PETROV at Astrafteros's address in Cyprus. On the invoice for the order provided to PETROV, U.S. Distributor-1 expressly noted that the microcontrollers are controlled under ECCN 3A991.a.2 and that the export of the microcontrollers is controlled by the U.S. Government, authorized "only to the country of ultimate destination for use by the ultimate consignee or end-user(s) herein identified," and that the items are prohibited from being "resold, transferred, or otherwise disposed of, to any other country or to any person other than the authorized ultimate consignee or end-user(s)."

37. On or about January 31, 2023, ARTHUR PETROV, the defendant, shipped the 90 controlled microcontrollers to Juzhoi in Tajikistan, and updated his superior at Electrocom, RUSLAN ALMETOV, the defendant, about the status of the shipment. ZHANNA SOLDATENKOVA, the defendant, participated in ensuring that the shipment reached Russia; among other things, SOLDATENKOVA emailed ALMETOV a contract between Electrocom and Juzhoi for the microcontrollers. The consignee on the contract, which was not provided to U.S. Distributor-1, was listed as Electrocom alongside its address in Saint Petersburg, Russia.

38. Over the following weeks, ZHANNA SOLDATENKOVA, the defendant, apprised her Electrocom colleagues, including RUSLAN ALMETOV, the defendant, of the shipment of the 90 microcontrollers. For example, on or about February 8, 2023, SOLDATENKOVA emailed ALMETOV the shipping label for the shipment that included the microcontrollers. SOLDATENKOVA was also tracking other Russia-bound shipments around this time. On or about February 27, 2023, SOLDATENKOVA emailed an employee of Aviasystems, a Russian aerospace company and military supplier that focuses on aircraft navigational support, flight controls, and landing equipment, to advise that a shipment of goods had arrived at Russian customs, and a second shipment was on the border. SOLDATENKOVA wrote, "Due to the fact that they are dual-use, we try to make certificates for them," an apparent reference to the military applications for the goods and SOLDATENKOVA's efforts around this time to facilitate shipment of such goods to Electrocom in Russia.

39. On or about March 1, 2023, RUSLAN ALMETOV, the defendant, sent a Juzhoi employee two emails reflecting that Export #3 involved Cyprus, Tajikistan, and Russia. ALMETOV attached "invoices from Cyprus to Dushanbe, as well as from Dushanbe to Russia," referring to the city in Tajikistan where Juzhoi is based. He attached the Astrafteros

invoice that listed the 90 controlled microcontrollers, and indicated that Electrocom was buying the goods from Juzhoi. ALMETOV added, "They have items that need to be left in a warehouse in Dushanbe," and stated that "The remaining positions," which ALMETOV made clear included the 90 controlled microcontrollers, "must be shipped to Russia on the provided invoice."

40. In or about early March 2023, the Export #3 microcontrollers arrived at Electrocom's address in Saint Petersburg, Russia.

41. A DOC license was not applied for, or obtained, in connection with the export of the microcontrollers in Export #3.

42. On or about August 26, 2023, ARTHUR PETROV, the defendant, was arrested in the Republic of Cyprus at the request of the United States. He was later extradited and first brought to and arrested in the Southern District of New York on August 8, 2024.

## STATUTORY ALLEGATIONS

### COUNT ONE
**(Conspiracy to Defraud the United States)**

43. The allegations contained in paragraphs 1 through 42 of this Indictment are incorporated as though fully set forth herein.

44. From at least in or about 2022, up to and including in or about August 2023, in the Southern District of New York, Cyprus, Russia, Latvia, Tajikistan, Lithuania, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to defraud the United States and agencies thereof, by impairing, impeding, obstructing, and defeating, through deceitful and dishonest

means, the lawful functions of the U.S. Department of Commerce, an agency of the United States, in the enforcement and issuance of licenses relating to the export of goods.

45. In furtherance of the conspiracy and to effect the illegal object thereof, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, and others known and unknown, committed the overt acts set forth in paragraphs 16, 18 through 21, 23 through 26, 28 through 32, 34, and 36 through 39 of this Indictment, among others.

(Title 18, United States Code, Sections 371 and 3238.)

**COUNT TWO**
**(Conspiracy to Violate ECRA)**

The Grand Jury further charges:

46. The allegations contained in paragraphs 1 through 42 of this Indictment are incorporated as though fully set forth herein.

47. From at least in or about 2022, up to and including in or about August 2023, in the Southern District of New York, Cyprus, Russia, Latvia, Tajikistan, Lithuania, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, knowingly and willfully combined, conspired, confederated, and agreed together and with each other to violate, and to cause a violation of, licenses, orders, regulations, and prohibitions issued under the Export Control Reform Act.

48. It was a part and an object of the conspiracy that ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, and others known and unknown, would and did export and cause to be exported from the United States to Russia items controlled under Subchapter I of the Export Control Reform Act, to wit, electronics components on the

Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, without having first obtained a license for such export from the U.S. Department of Commerce, in violation of Title 50, United States Code, Section 4819(a)(2)(A), (B), (C), (D), (E), (F), and (G), and Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2.

(Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b); Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2; and Title 18, United States Code, Section 3238.)

**COUNT THREE**
**(Violation of ECRA – Export #1)**

The Grand Jury further charges:

49. The allegations contained in paragraphs 1 through 42 of this Indictment are incorporated as though fully set forth herein.

50. From at least in or about April 2022, up to and including in or about October 2022, in the Southern District of New York, Cyprus, Russia, Latvia, Lithuania, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV and ZHANNA SOLDATENKOVA, the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, knowingly and willfully exported and caused to be exported, and attempted to export and cause to be exported, from the United States to Russia items controlled under Subchapter I of the Export Control Reform Act, to wit, microcontrollers on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, controlled under Export

Control Classification Number 3A991.a.2, without having first obtained a license for such export from the U.S. Department of Commerce, and aided and abetted the same.

(Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b); Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2; and Title 18, United States Code, Sections 2 and 3238.)

**COUNT FOUR**
**(Violation of ECRA – Export #2)**

The Grand Jury further charges:

51. The allegations contained in paragraphs 1 through 42 of this Indictment are incorporated as though fully set forth herein.

52. From at least in or about July 2022, up to and including in or about October 2022, in the Southern District of New York, Cyprus, Russia, Latvia, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV and ZHANNA SOLDATENKOVA, the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, knowingly and willfully exported and caused to be exported, and attempted to export and cause to be exported, from the United States to Russia items controlled under Subchapter I of the Export Control Reform Act, to wit, integrated circuits on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, controlled under Export Control Classification Number 3A991.b.1.a, without having first obtained a license for such export from the U.S. Department of Commerce, and aided and abetted the same.

(Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b); Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2; and Title 18, United States Code, Sections 2 and 3238.)

**COUNT FIVE**
**(Violation of ECRA – Export #3)**

The Grand Jury further charges:

53. The allegations contained in paragraphs 1 through 42 of this Indictment are incorporated as though fully set forth herein.

54. From at least in or about April 2022, up to and including in or about March 2023, in the Southern District of New York, Cyprus, Russia, Latvia, Tajikistan, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, knowingly and willfully exported and caused to be exported, and attempted to export and cause to be exported, from the United States to Russia items controlled under Subchapter I of the Export Control Reform Act, to wit, microcontrollers on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, controlled under Export Control Classification Number 3A991.a.2, without having first obtained a license for such export from the U.S. Department of Commerce, and aided and abetted the same.

(Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b); Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2; and Title 18, United States Code, Sections 2 and 3238.)

**COUNT SIX**
**(Conspiracy to Smuggle Goods from the United States)**

The Grand Jury further charges:

55. The allegations contained in paragraphs 1 through 42 of this Indictment are incorporated as though fully set forth herein.

56. From at least in or about February 2022, up to and including in or about August 2023, in the Southern District of New York, Cyprus, Russia, Latvia, Tajikistan, Lithuania, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, smuggling goods from the United States in violation of Title 18, United States Code, Section 554.

57. It was a part and an object of the conspiracy that ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, and others known and unknown, would and did fraudulently and knowingly export and send from the United States, attempt to export and send from the United States, and cause to be exported and sent from the United States, merchandise, articles, and objects, to wit, items controlled under Subchapter I of the Export Control Reform Act, namely, electronics components on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, contrary to laws and regulations of the United States, to wit, the Export Control Reform Act and associated regulations, Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b), and Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2, and fraudulently and knowingly receive, conceal, buy, sell, and in any manner facilitate the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for exportation contrary to such laws and regulations of the United States.

58. In furtherance of the conspiracy and to effect the illegal objects thereof, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, and others known and unknown, committed the overt acts set forth in paragraphs 16, 18 through 21, 23 through 26, 28 through 32, 34, and 36 through 39 of this Indictment, among others.

(Title 18, United States Code, Sections 371 and 3238.)

**COUNT SEVEN**
**(Smuggling Goods from the United States – Export #1)**

The Grand Jury further charges:

59. The allegations contained in paragraphs 1 through 42 of this Indictment are incorporated as though fully set forth herein.

60. From at least in or about April 2022, up to and including in or about October 2022, in the Southern District of New York, Cyprus, Russia, Latvia, Lithuania, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV and ZHANNA SOLDATENKOVA, the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, fraudulently and knowingly exported and sent from the United States, attempted to export and send from the United States, and caused to be exported and sent from the United States, merchandise, articles, and objects, to wit, items controlled under Subchapter I of the Export Control Reform Act, namely, microcontrollers on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, controlled under Export Control Classification Number 3A991.a.2, contrary to laws and regulations of the United States, to wit, the Export Control Reform Act and associated regulations, Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b), and Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2, and fraudulently and knowingly received, concealed, bought,

sold, and in any manner facilitated the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for exportation contrary to such laws and regulations of the United States.

(Title 18, United States Code, Sections 554(a), 2, and 3238.)

**COUNT EIGHT**
**(Smuggling Goods from the United States – Export #2)**

The Grand Jury further charges:

61. The allegations contained in paragraphs 1 through 42 of this Indictment are incorporated as though fully set forth herein.

62. From at least in or about July 2022, up to and including in or about October 2022, in the Southern District of New York, Cyprus, Russia, Latvia, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV and ZHANNA SOLDATENKOVA, the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, fraudulently and knowingly exported and sent from the United States, attempted to export and send from the United States, and caused to be exported and sent from the United States, merchandise, articles, and objects, to wit, items controlled under Subchapter I of the Export Control Reform Act, namely, integrated circuits on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, controlled under Export Control Classification Number 3A991.b.1.a, contrary to laws and regulations of the United States, to wit, the Export Control Reform Act and associated regulations, Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b), and Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2, and fraudulently and knowingly received, concealed, bought, sold, and in any manner facilitated the transportation, concealment, and sale of such merchandise,

articles, and objects, prior to exportation, knowing the same to be intended for exportation contrary to such laws and regulations of the United States.

(Title 18, United States Code, Sections 554(a), 2, and 3238.)

**COUNT NINE**
**(Smuggling Goods from the United States – Export #3)**

The Grand Jury further charges:

63. The allegations contained in paragraphs 1 through 42 of this Indictment are incorporated as though fully set forth herein.

64. From at least in or about April 2022, up to and including in or about March 2023, in the Southern District of New York, Cyprus, Russia, Latvia, Tajikistan, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, fraudulently and knowingly exported and sent from the United States, attempted to export and send from the United States, and caused to be exported and sent from the United States, merchandise, articles, and objects, to wit, items controlled under Subchapter I of the Export Control Reform Act, namely, microcontrollers on the Commerce Control List set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, controlled under Export Control Classification Number 3A991.a.2, contrary to laws and regulations of the United States, to wit, the Export Control Reform Act and associated regulations, Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G), and 4819(b), and Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2, and fraudulently and knowingly received, concealed, bought, sold, and in any manner facilitated the transportation,

concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for exportation contrary to such laws and regulations of the United States.

(Title 18, United States Code, Sections 554(a), 2, and 3238.)

**COUNT TEN**
**(Conspiracy to Commit Wire Fraud)**

The Grand Jury further charges:

65. The allegations contained in paragraphs 1 through 42 of this Indictment are incorporated as though fully set forth herein.

66. From at least in or about February 2022, up to and including in or about August 2023, in the Southern District of New York, Cyprus, Russia, Latvia, Tajikistan, Lithuania, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, knowingly and willfully combined, conspired, confederated, and agreed together and with each other to commit wire fraud in violation of Title 18, United States Code, Section 1343.

67. It was a part and an object of the conspiracy that ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3238.)

**COUNT ELEVEN**
**(Conspiracy to Commit Money Laundering)**

The Grand Jury further charges:

68. The allegations contained in paragraphs 1 through 42 of this Indictment are incorporated as though fully set forth herein.

69. From at least in or about February 2022, up to and including in or about August 2023, in the Southern District of New York, Cyprus, Russia, Latvia, Tajikistan, Lithuania, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other commit money laundering in violation of Title 18, United States Code, Section 1956(a)(2)(A).

70. It was a part and an object of the conspiracy that ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, and others known and unknown, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds to places in the United States from and through places outside the United States, in amounts exceeding $10,000, with the intent to promote the carrying on of specified unlawful activity, to wit, (a) smuggling goods from the United States, as charged in Counts Seven through Nine of this Indictment, and (b) wire fraud, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1956(h), 1956(f), and 3238.)

## FORFEITURE ALLEGATIONS

71. As a result of committing the ECRA offenses alleged in Counts Two through Five of this Indictment, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, shall forfeit to the United States, pursuant to Title 50, United States Code, Section 4819(d), all property (i) used or intended to be used, in any manner, to commit or facilitate the offenses alleged in Counts Two through Five; (ii) constituting or traceable to the gross proceeds taken, obtained, or retained, in connection with or as a result of the offenses alleged in Counts Two through Five; and (iii) constituting an item or technology that was exported or intended to be exported in violation of Title 50, United States Code, Chapter 58, Subchapter I, including but not limited to a sum of money representing the amount of proceeds obtained as a result of these offenses.

72. As a result of committing the wire fraud offense alleged in Count Ten of this Indictment, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money representing the amount of proceeds obtained as a result of the offense.

73. As a result of committing the money laundering offense alleged in Count Eleven of this Indictment, ARTHUR PETROV, ZHANNA SOLDATENKOVA, and RUSLAN ALMETOV, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real and personal, involved in the money laundering offense and all property traceable to such property, including but not limited to a sum of money representing the

amount of property that was involved in the money laundering offense or is traceable to such property.

**Substitute Assets Provision**

74. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third person;

c) has been placed beyond the jurisdiction of the court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981, 982;
Title 21, United States Code, Section 853;
Title 28, United States Code, Section 2461;
Title 50, United States Code, Section 4819.)

[redacted]
FOREPERSON

DAMIAN WILLIAMS
United States Attorney